IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Thomas E. Killion, et al.,

                Plaintiffs,

    -vs-

KeHE Distributors,

                Defendant.

            *  *  *

Barney Dolan, et al.,

                Plaintiffs,

    -vs-

KeHE Food Distributors, Inc.,

                Defendant.

Case Nos. 3:12 CV 470
             3:12 CV 1585

MEMORANDUM OPINION
AND ORDER

JUDGE JACK ZOUHARY

## INTRODUCTION

This is a dispute under the Fair Labor Standards Act ("FLSA") where Plaintiffs allege Defendant KeHE Distributors ("KeHE"), a national distributor of food products to supermarkets and retail chains, denied overtime pay to current and former sales representatives (Killion Doc. 1 at 1–3). Plaintiffs seek to certify a collective action against KeHE (Killion Doc. 38), and filed lawsuits in the Northern District of Ohio and the Eastern District of Michigan (Killion Doc. 1; Dolan Doc. 1). The Eastern District of Michigan case, *Dolan v. KeHE Food*, No. 4:12 CV 1585, was transferred to this Court and consolidated with *Killion v. KeHE Distr., LLC.*, No. 3:12 CV 470 (Dolan Docs. 26 & 31).

Before this Court can decide whether to certify Plaintiffs' collective action, it must decide two counter motions.  First, KeHE moved to dismiss Anthony Basnec as a Plaintiff because he signed a Separation and Release Agreement ("the Agreement") waiving various rights under the FLSA, including the right to join a collective action against KeHE (Killion Doc. 70).  Second, Plaintiffs moved to void the Agreement signed by certain named and potential Plaintiffs (Dolan Doc. 5).  Both matters have been fully briefed (Dolan Docs. 15 & 20; Killion Docs. 74 & 79).  Because the motions raise identical issues, the parties agreed this Court could address both in a single opinion.

As a federal court sitting in diversity, this Court applies Ohio substantive law.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Ohio law requires this Court to apply "[t]he law of the state chosen by the parties to govern their contractual rights . . . ."  *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 6 Ohio St. 3d 436, 438 (1983) (quoting Restatement of Law (Second), Conflict of Laws, Section 187 (1971)).  Because the parties chose Michigan law to apply, this Court, to the extent necessary, will use that law to interpret the provisions of the Agreement (Killion Doc. 71-2 at 9).

## BACKGROUND

Plaintiffs previously moved to invalidate the Agreements as to Thomas Killion and Carl Ovall (Killion Docs. 36 & 37), arguing FLSA rights "cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute . . . ." (Killion Doc. 37 at 4) (quoting *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 740 (1981)). While KeHE conceded that controlling law prevents Plaintiffs from waiving their claims under the FLSA, it distinguished nonwaivable *substantive* FLSA rights, discussed in *Barrentine*, from the *procedural* right to join a collective action (Killion Doc. 46 at 3–4 & 7).  Procedural rights, according to KeHE, are waivable.

Without addressing the substantive/procedural dichotomy advanced by KeHE, this Court ultimately determined those Plaintiffs could join the collective action (Killion Doc. 60 at 3–4). Specifically, this Court found the Agreements signed by Killion and Ovall had been modified to preserve their rights -- procedural or otherwise -- under the FLSA.  The Agreements at issue here contain no such modifications.

These Agreements were sent to KeHE sales representatives in February 2012 after they had been notified their positions would be terminated through a reduction in force.  The employees were offered a retention bonus if they continued their employment until March 17, 2012, so long as they signed the Agreements.  Each Agreement contained a "General Release of Claims and Covenant Not to Sue," which included a promise not to join "any class or collective action" against KeHE arising under the FLSA or other federal laws (Dolan Doc. 5-1 at 4–5).  Basnec, and sixty-eight others, signed and returned the Agreements (Killion Doc. 71-2).

## ANALYSIS

The Complaints allege KeHE violated 29 U.S.C. § 207, the overtime provision of the FLSA, by failing to pay various sales representatives for overtime worked in excess of forty hours per week (Killion Doc. 1 at 3; Dolan Doc. 18 at 3).  Plaintiffs filed their Complaints pursuant to 29 U.S.C. § 216(b), which allows:

> An action . . . against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Basnec filed his consent pursuant to Section 216(b) (Killion Doc. 58) and also signed the Agreement discussed above.  The question for this Court is whether the right to join a collective

3

action -- the right described in Section 216(b) -- can be waived and, if so, whether the Agreement was valid.  The Sixth Circuit has yet to rule on the two questions at issue; however, as explained below, the answer to both questions is yes, though not for reasons advanced by the parties.

### KeHE's Argument that Section 216(b) is Procedural

KeHE, relying on a number of district court cases, argues the right to a collective action is procedural and therefore waivable.  However, a review of those cases reveals their analysis is based on an overextension and misapplication of circuit case law.  KeHE argues (Dolan Doc. 15 at 14):

> The overwhelming weight of authority holds that unlike an unsupervised waiver of an employee's *substantive* rights under the FLSA, employees are free to waive through individual agreement with their employer the *procedural* right to participate in a class or collective action.  *See, e.g.*, *Aracri v. Dillard's, Inc.*, 2011 WL 1388613, at \*5 (S.D. Ohio 2011); *Winn v. Tenet Healthcare Corp.*, 2011 WL 294407, at \*9 (W.D. Tenn. 2011).

There are several problems with this argument.

First, *Aracri* is distinguishable.  That case dealt with a collective action waiver contained in an arbitration agreement, which was ultimately upheld.  Its validity was "initially a question of contract interpretation and should be decided in the first instance by an arbitrator." *Aracri*, 2011 WL 1388613 at \*4 (citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 447, 455 (2003) (plurality opinion and Justice Stevens' concurrence agreeing that interpretation "should have been made in the first instance by the arbitrator")).  Because that specific clause had yet to be interpreted by the arbitrator, *Aracri* never reached the waivability of the collective action right.

Second, *Aracri* relies heavily on a Western District of Tennessee case, which found:

> The Supreme Court has held that FLSA rights, such as the right to basic statutory minimum wage, the right to overtime, wages, and the right to liquidated damages, "may not be abridged by contract or otherwise waived."  However, the "mere fact that class actions are mentioned within § 216(b) does not create a 'right' for a plaintiff to bring a class action."  The Court finds that none of Plaintiff's potential FLSA remedies

4

are jeopardized if she is deemed to have released her ability to proceed in a class action.

*Winn*, 2011 WL 294407 at *9 (citations omitted).  *Winn* in turn relies on a Northern District of Illinois case, which bases its analysis on two cases from the Fourth and Eleventh Circuits.  See *Brown v. Sears Holdings Mgmt., Corp.*, 2009 WL 2514173, at*3 (N.D. Ill. 2009) (citing *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 351 (4th Cir. 2008); *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003)).  According to the sources relied upon by KeHE, those circuit court cases stand for the general proposition that rights to a collective action are waivable.  Recalling LeVar Burton's cautionary phrase "but you don't have to take my word for it," this Court investigated.

The Fourth Circuit in *Long John Silver's* did not hold that collective actions under the FLSA are procedural in nature and thus waivable, and that case does little to advance KeHE's argument.  For starters, *Long John Silver's* interpreted a completely different part of Section 216(b).  In pertinent part, Section 216(b) provides:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.
>
> [and]
>
> No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

The issue in this case involves the first part -- the general right to a collective action.  *Long John Silver's*, however, addressed the waivability of the second part -- the "opt-in" procedure required to join a collective action.

5

Additionally, *Long John Silver's* did not definitively hold that Section 216(b)'s "opt-in" requirement could be waived, but rather determined an arbitrator's decision to certify an "opt-out" class was not a "manifest disregard of the law." 514 F.3d at 350–53. This reasoning is analogous to that in *Aracri*, as both cases recognized it was the arbitrator's responsibility to interpret the enforceability of clauses in an arbitration agreement. Accordingly, *Long John Silver's* is inapplicable and cannot be perfunctorily read to apply to all of Section 216(b).

The Eleventh Circuit case, *Cameron-Grant*, is even less helpful. Like *Long John Silver's*, *Cameron-Grant* addresses the FLSA's opt-in requirement under Section 216(b). 347 F.3d at 1247–49. However, unlike *Long John Silver's*, there is no analysis -- or even an oblique reference -- to the waivability of the opt-in requirement. The only similarity between *Cameron-Grant* and this case is that both cases happen to arise from violations of the FLSA.

KeHE also cites to courts outside the Sixth Circuit which have "upheld class and collective action waivers" in the context of the FLSA (Dolan Doc. 15 at 15) (citing *Palmer v. Convergys Corp.*, 2012 WL 425256, at *2 (M.D. Ga. 2012); *Copello v. Boehringer Ingelheim Pharms., Inc.*, 812 F. Supp. 2d 886, 893–94 (N.D. Ill. 2011); and *Brown*, 2009 WL 2514173 at *4); *see also* (Killion Doc. 71 at 3) (citing many of the same cases as well as *LaVoice v. UBS Fin. Servs., Inc.*, 2012 WL 124590, at *6–8 (S.D.N.Y. 2012) and *De Oliveira v. Citicorp N. A., Inc.*, 2012 WL 1831230, at *2 (M.D. Fla. 2012)).

These cases all rely, to varying degrees, on the same handful of opinions. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297–98 (5th Cir. 2004); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002); *Horenstein v. Mortgage. Mkt., Inc.*, 9 F. App'x 618, 619 (9th Cir. 2001). These cases

each found that arbitration agreements containing waivers are valid, based primarily on their reading of *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 29 (1991).  But *Gilmer* does not go as far as these circuit courts would like.

In *Gilmer*, the Court considered whether an employee was required to arbitrate an alleged wrongful termination under the Age Discrimination and Employment Act ("ADEA").  *Id.* at 23–24. The Court held compulsory arbitration did not run afoul of the text, legislative history, or purpose of the ADEA.  *Id.* at 26–27.  Like the FLSA, the ADEA was enacted to protect individuals as well as important social policies.  *See id.* at 27 (citing *EEOC v. Wyoming*, 460 U.S. 226, 231 (1983)).  Indeed, the ADEA expressly adopts the collective action procedures in Section 216(b).  *See* 29 U.S.C. § 626(b); *Carter*, 362 F.3d at 298.  According to *Gilmer*, plaintiffs can be forced to arbitrate their ADEA claims "[s]o long as the prospective litigant effectively may vindicate [their] statutory cause of action in the arbitral forum . . . ."  500 U.S. at 28 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)).  But *Gilmer* did not hold that the right to a collective action may be waived.  To the contrary, the arbitral forum at issue in *Gilmer* actually provided for a collective action, *id.* at 32, and KeHE admitted, during a recent record hearing, that *Gilmer* did not go so far as to hold that such an action may be waived.  Subsequent decisions relying on *Gilmer* surprisingly ignore its holding.  *See, e.g.*, *Caley*, 428 F.3d at 1371; *Horenstein*, 9 F. App'x at 619.  This Court is unpersuaded by those cases.

The final case KeHE relies on is *Adkins*, which holds that there is "no suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute."  303 F.3d at 503.  Fair enough, but the Supreme Court has held that FLSA rights "cannot be abridged by contract or otherwise waived because this would nullify the

7

purposes of the statute . . . ." *Barrentine*, 450 U.S. at 740 (quotation omitted). *Adkins*, distinguishing *Barrentine*, stated *Barrentine* "was limited to the case of collective-bargaining arbitration and was thus rooted in substantive concerns that simply do not apply to the present case." 303 F.3d at 506. Yet this distinction ignores the broader point -- parties may not waive provisions that would nullify the purposes of the FLSA. Common sense dictates that if a waiver of rights makes suit less likely, and in some instances excludes it altogether, that waiver may be invalid. Whether the right to a collective action is such a provision remains an open question addressed more fully below.

**Plaintiffs' Argument that Section 216(b) is Substantive**

Plaintiffs' argument fails to persuade primarily due to the dearth of authority in their briefs. Of course, it has long been recognized that agreements purporting to waive statutory rights "charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704 (1945). According to Plaintiffs, the Agreements do just that and are void as a matter of public policy (Dolan Doc. 5 at 9).

Plaintiffs argue the right to a collective action is not waivable because it lowers the individual cost needed "to vindicate rights by the pooling of resources," *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 313 (S.D.N.Y. 2011), and without that advantage, Plaintiffs would be unable to assert their substantive rights under the FLSA. Other than that bare bones statement, Plaintiffs fail to present any evidence indicating how their individual rights can only be "vindicated" through a collective action.

This Court recognizes that the ability to form a collective action necessarily implicates policy considerations regarding the enforcement of the FLSA. Because the amount of money at stake may be small, the right to join a larger pool of similarly situated individuals enables the pool to attract

8

counsel who, if victorious, is entitled to recover fees.  *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 586 (6th Cir. 2009).  In other contexts, it is recognized  "Congress has stated its policy that [] plaintiffs should have the *opportunity* to proceed collectively."  *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (emphasis added) (quotations omitted).  But obviously, waiving an opportunity presupposes the existence of an opportunity.

Still, courts have invalidated waivers based solely on public policy grounds.  In *Dale v. Comcast Corp.*, 498 F.3d 1216, 1224 (11th Cir. 2007), the Eleventh Circuit struck down a class action waiver because:

> Without the benefit of a class action mechanism, [plaintiffs] would effectively be precluded from suing Comcast for a violation of [the Act].  The cost of vindicating an individual subscriber's claim, when compared to his or her potential recovery, is too great.  Additionally, because the Cable Act does not provide for the recovery of attorneys' fees or related costs for the violations alleged by the subscribers, and because state law allows fees and costs to be awarded only where bad faith is shown, it will be difficult for a single subscriber to obtain representation.  This will allow Comcast to engage in unchecked market behavior that may be unlawful. Corporations should not be permitted to use class action waivers as a means to exculpate themselves from liability for small-value claims.

*Dale*, however, is distinguishable from this case.  For example, in *Dale*, the potential recovery for the individual plaintiff was $10.56 due to an overcharge of $0.66 every three months for four years.  Because there were an estimated 58,900 plaintiffs, the potential total award -- and therefore contingency fee -- was quite large.  *Id.* at 1220.  Additionally, in *Dale*, the court was concerned with the class action waiver because plaintiffs sued under a provision of the Cable Communications Policy Act that did not provide for attorneys' fees and costs.  *Id.* at 1223.  The court distinguished other decisions where similar waivers had been upheld because the relevant statutes provided for mandatory attorneys' fees.  *Dale* reasoned that even in the absence of a class action, automatic fee shifting would be sufficient incentive for individual representation.  *Id.*

9

Courts have upheld other types of waivers in the absence of proof that the waived right is prejudicial.  In the context of arbitration agreements, where a party seeks invalidation "on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.*, 531 U.S. at 92; *see also*, *Gilmer*, 500 U.S. at 26 ("[T]he burden is on [Plaintiff] to show that Congress intended to preclude a waiver of a judicial forum for ADEA claims.").   The Fourth Circuit applied *Green Tree* to an arbitration of an FLSA claim where, like here, the parties surrendered their right to a collective action.  *Adkins*, 303 F.3d at 502.  *Adkins* refused to strike the agreement partly because plaintiffs made "no showing of the specific financial status of any of the plaintiffs at the time this action was brought . . . . [and] provide[d] no basis for a serious estimation of how much money [was] at stake for each individual plaintiff."  303 F.3d at 502–03.

Here, this Court has no idea how much money is at stake.[1]  The Complaints merely claim "[l]iquidated damages under 29 U.S.C. § 216(b) in an amount equal to double the wages due the class members." (Killion Doc. 1 at 5).  Nor does the record disclose how many potential Plaintiffs would comprise the collective action, whether Plaintiffs can afford to pursue their claims individually, or how much it would actually cost them to pursue individual claims.  Moreover, attorneys' fees are mandatory under Section 216(b), *see, e.g.*, *Aleyska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 261 n.34 (1975), which means individual Plaintiffs will still be able to vindicate their rights under the FLSA.  Plaintiffs acknowledge that if this Court enforces the Agreement, they could still "set up a separate sub-class involving 'individual actions'" (Dolan Doc. 20 at 5).  Accordingly,

---

[1]

At the recent record hearing, KeHE stated individual claims could be worth up to $40,000 each. Plaintiffs did not object to that figure.

Plaintiffs have failed, under a *Dale/Adkins* analysis, to demonstrate that the collective action waiver would prevent enforcement of their FLSA rights.

### Analysis of the Statute

As noted above, several circuits have addressed whether the right to a collective action may be waived, but for a variety of reasons those decisions are unpersuasive.  Still other circuits have expressly passed on that question or have yet to resolve a split among its district courts.  *See, e.g.*, *Skirchak v. Dynamics Research Corp.*, 508 F.3d 49, 62 (1st Cir. 2007) ("We do not need to decide if class actions under the FLSA may ever be waived by agreement . . . .  We also do not reach the question of whether such waivers of FLSA class actions are per se against public policy under either the FLSA or the Massachusetts Fair Wage Law.").  *Compare Raniere*, 827 F. Supp. 2d at 314 (holding the right to collective action cannot be waived), *with LaVoice*, 2012 WL 124590 (S.D.N.Y. 2012) (holding it can).  The Sixth Circuit has not yet shed light on the precise issue.

One of the few courts to invalidate a collective action waiver is *Raniere*.  In that case, plaintiffs  signed an arbitration agreement preventing them from proceeding collectively under the FLSA.  *Raniere*, 827 F. Supp. 2d at 304.  *Raniere* held arbitration agreements are invalid when they prevent the enforcement of statutory rights.  *Id.* at 309 (citing *In re American Express Merchs.' Litig.*, 634 F.3d 187 (2d Cir. 2011)).  Finding that collective action waivers prevent such enforcement, *Raniere* relied heavily on the extremely limited legislative history of the FLSA regarding the right to a collective action.  *Id.* at 311–13.

*Raniere* began by discussing the FLSA as it was originally passed in 1938, focusing on a statement by Representative Kent Keller during Congressional debates.  This was the only reference made to what has become the collective action rights in Section 216(b):

11

> If there shall occur violations of either the wages or hours, the employees can themselves, *or by designated agent or representatives*, maintain an action in any court to recover the wages due them . . . . The provision has the further virtue of minimizing the cost of enforcement by the Government.  It is both a common-sense and economical method of regulation . . . . [which] puts directly into the hands of the employees who are affected by violation the means and ability to assert and enforce their own rights . . . .

83 Cong. Rec. p. 9264 (emphasis added).  Subsequent amendments indicate that Congress intended

collective actions to serve the FLSA's remedial and deterrent functions.  827 F. Supp. 2d at 313.

According to *Raniere*, the collective action right is integral to the FLSA and in line with Congress'

general intent to level the playing field between employees and employers.  *Id.* at 314.

But that is all there is, which is not nearly enough to persuade this Court that Section 216(b)'s

collective action right can never be waived.  This conclusion is driven by the text of the statute itself.

*See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional

intent is the existing statutory text.").  In pertinent part, Section 216(b) (emphasis added), provides:

> An action to recover the liability prescribed in either of the preceding sentences *may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.*

Where the plain language of the statute does not lead to an absurd result, this Court's "sole function

. . . is to enforce it according to its terms."  *Hartford Underwriters Ins. Co. v. Union Planters Bank,*

*N.A.*, 540 U.S. 526, 534 (2004).

The statute *permits* a collective action, but it does not *require* one.  Plaintiffs concede this

when they note they could proceed as a collective action or aggregate their individual claims (Dolan

Doc. 20 at 5).  Additionally, Plaintiffs have done nothing to demonstrate financial burden in an

individual pursuit of their claims and, aside from bare assertions, made no showing individual actions

will impede enforcement of the FLSA.  Without such a showing the waiver does not "nullify the

12

purposes of the statute," *Barrentine*, 450 U.S. at 740 (quotation omitted), or "thwart [] legislative policy." *Brooklyn Sav. Bank*, 324 U.S. at 704.  Section 216(b) is clear: Plaintiffs *may* proceed collectively, not *shall*.  By signing the Agreement they waived that right.

At the record hearing, Plaintiffs argued Section 216(c) narrowly proscribes the kinds of waivers available under the FLSA.  According to Plaintiffs, FLSA waivers are only appropriate if supervised by the Secretary of Labor.  But that clearly misreads Section 216(c):

> The Secretary is authorized to supervise the payment of . . . unpaid overtime compensation . . . and the agreement of any employee to accept such payment shall . . . constitute a waiver . . . of any right  . . . [to] unpaid overtime compensation . . . .

That section only applies to the waiver of a right to unpaid compensation.  Section 216(c) says nothing about waiving a right to a collective action in federal court.

Further support that collective actions may be waived is found in *AT&T Mobility LLC v. Conception*, ---- U.S. ----, 131 S. Ct. 1740 (2011).  *AT&T* addressed whether the Federal Arbitration Act ("FAA") preempted state laws that invalidated arbitration agreements containing bars to classwide arbitration.  131 S. Ct. at 1744.  Admittedly, *AT&T* did not address whether the FLSA is preempted by the FAA.  However, *AT&T* did state that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."  131 S. Ct. at 1748.  *AT&T* generally held that individual proceedings are necessary to arbitration and trump any underlying policy considerations.  *Id.* at 1750–52.  That policy applies in any context, including arbitrations that limit collective actions under the FLSA.  *Cf. Cooper v. MRM Inv. Co.*, 367 F.3d 493, 499 (6th Cir. 2004) (listing types of claims that may be subjected to binding arbitration) (citing *Bailey v. Ameriquest Mortgage Co.*, 346 F.3d 821, 822 n.1 (8th Cir. 2003) (validating collective action waiver in FLSA arbitration)).

If the right to a collective action may be waived in an arbitration agreement, then what prevents that right from being waived in other agreements?  The numerous briefings and record hearing offer no good answer.  The enforceability of a collective waiver does not change outside the arbitration context.  *See Palmer*, 2012 WL 425256 at *2 ("[T]here is no logical reason to distinguish a waiver in the context of an arbitration agreement from a waiver in any other contract.").  After all, arbitration agreements are scrutinized under contract theories and are on "equal footing" with contracts.  *AT&T*, 131 S. Ct. at 1745–46 (holding agreements to arbitrate are unenforceable based on any of the "generally applicable contract defenses, such as fraud, duress, or unconscionability"); *see also*, *Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 479–80 (6th Cir. 2005) (finding no basis in contract law to invalidate an arbitration agreement); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997) ("An agreement to arbitrate is treated like any other contract.").

Plaintiffs argue that cases allowing collective action waivers in the arbitration context only did so because underlying FAA policies dictated that result.  *See, e.g.*, *Gilmer*, 500 U.S. at 24 (holding the FAA's "purpose was to reverse the longstanding judicial hostility to arbitration"); *Caley*, 428 F.3d at 1367, 1368.  Accordingly, had the FAA's "liberal federal policy favoring arbitration agreements" not been at issue, then the collective action waivers would have never been enforced.  *See Moses H. Cone Mem'l Hosp. v. Mecury Constr. Corp.*, 460 U.S. 1, 24 (1983) (favoring arbitration).  Plaintiffs conclude that in the absence of the FAA, only the FLSA's broad remedial purpose controls -- a purpose which apparently should persuade this Court to invalidate the waiver.  It does not.

This Court must construe the FLSA "liberally to effectuate the broad policies and intentions of Congress." *Fegley v. Higgins*, 19 F.3d 1126, 1133 (6th Cir. 1994) (quoting *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 144 (6th Cir. 1977)).  This is true whether or not the FAA is involved,

14

because in arbitration "a party does not forgo the substantive rights afforded by the [FLSA]; it only

submits to [] resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp.*, 473

U.S. at 628 (1987).  It is true that the cases KeHE relies on upheld the arbitration agreements in part

because of the arbitral preference under the FAA, but that is not why they upheld the collective action

waivers.  Those waivers were upheld because they did not offend the purposes of the FLSA. *See, e.g.*,

*Aracri*, 2011 WL 1388613 at \*5 (upholding collective action waiver and quoting *Gilmer*, 500 U.S.

at 28, for the proposition that in arbitration, litigants must be able to fully vindicate their statutory

rights); *Winn*, 2011 WL 294407 at \*8 (same).

Plaintiffs have not convinced this Court how the waiver here would undermine their rights

under the FLSA.  Therefore, given the statutory language and cases discussed above, this Court finds

the collective action waiver is not offensive to the FLSA.  This Court next turns to the enforceability

of the Agreement as a whole.

### The Agreement is Enforceable

Even if collective action rights can be waived under the FLSA, Plaintiffs argue this

Agreement, and particularly the waiver in Section 3, is unenforceable.  Section 3 states (Killion Doc.

71-2 at 7):

> I waive and give up any right to become, and promise not to consent to become, a
> member of any class or collective action in a case in which claims are asserted against
> [KeHE] that are related in any way to my employment or the termination of my
> employemnt with [KeHE].
>
> . . . .
>
> To the extent permissible by law, this release of all claims . . . includes without
> limitation any and all claims arising out of my employment with [KeHE] . . . and all
> other claims arising under . . . the Fair Labor Standards Act . . . .

15

Given that language, it is conceivable the Agreement not only limits the right to proceed collectively, but also bars "all claims," including individual ones. Plaintiffs make that very argument, stating that a bar to all FLSA claims would amount to a general waiver of substantive rights under the Act, requiring this Court to invalidate the Agreement. KeHE argues the Agreement's severability clause in Section 9 allows this Court to strike invalid provisions so the remainder of the Agreement may be enforced. However, it is unclear from KeHE's briefings how this Court could rewrite the theoretically offending parts of Section 3 out of the Agreement without creating ambiguity or striking the entire section. In any case, this Court need not proceed any further because the Agreement does not waive all FLSA claims, only those "permissible by law" (Killion Doc. 71-2 at 7). As KeHE concedes, and as required by Circuit precedent, that does not include waivers of individual claims (Dolan Doc. 15 at 16). *McConnell v. Applied Performance Tech., Inc.*, 98 F. App'x 397, 398 (6th Cir. 2004). Therefore the Agreement is not a general bar to all claims as Plaintiffs contend.

Plaintiffs also challenge the validity of the Agreement based on the confidentiality provision contained in Section 5 because it "contravenes FLSA policy" (Dolan Doc. 5 at 7, n.1). This argument is unavailing. Section 5 provides, among other things, that "the terms of the Agreement are fully confidential" as well as various "trade secrets . . . sales, financial, marketing, training and technical information" (Killion Doc. 71-2 at 8). How that provision renders invalid the entire Agreement is unclear. First, Section 5 has nothing to do with the FLSA -- indeed does not even mention it -- and this Court doubts such a provision would apply to an award under the FLSA. Even if it did, other courts have nonetheless approved confidential settlements of FLSA claims. *See, e.g.*, *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *1 (N.D. Ohio 2010).

16

Second, Plaintiffs fail to develop their argument, giving it only a passing reference in a footnote, and citing two Middle District of Florida cases which were explicitly rejected by at least one court in the same district. *See Jarvis v. City Elec. Supply Co.*, 2012 WL 933057, at \*5 (M.D. Fla. 2012) (disagreeing with *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227 (M.D. Fla. 2012) and *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346 (M.D. Fla. 2010)).

Third, even if Section 5 is invalid, this is one section of the Agreement where this Court could easily apply the severability clause by simply removing Section 5 in its entirety.  It is basic contract law that "the failure of a distinct part of a contract does not void valid, severable provisions." *McMullen v. Meijer, Inc.*, 166 F. App'x 164, 168 (6th Cir. 2006) (citing *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 534 N.W. 2d 217, 220 (Mich. 1995)).  Courts routinely enforce severability clauses in employment agreements.  *See, e.g.*, *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003); *DeOrnellas v. Aspen Square Mgmt., Inc.*, 259 F. Supp. 2d 753 (E.D. Mich. 2003).

The severability clause here provides (Killion Doc. 71-2 at 9):

> If any portion of this Agreement is found by a Court to be void or unenforceable for any reason in regard to any one or more parties, entities, or subject matters, such portion shall remain in full force and effect with respect to all other persons, entities, and subject matters.

Should this Court find, at a later date, Section 5's confidentiality requirements offensive to the policies of the FLSA, that provision may easily be severed.

Nothing else in the Agreement limits Plaintiffs' access to the courts, or to any damages and fees allowed by the FLSA.  Moreover, Plaintiffs have not argued the Agreement is unconscionable, illusory, lacks an essential element, or is otherwise defective, and this Court finds the Agreement is enforceable.

17

## CONCLUSION

Accordingly, Plaintiffs' Motion to Void is denied and KeHE's Motion to Strike is granted. This ruling is applicable to all employees who signed an unaltered Agreement. Those employees may, if they so choose, pursue their FLSA claims against KeHE on an individual basis. It is important to note that KeHE merely offered its employees a retention bonus in exchange for continued employment and the waiver of various rights -- one of which was the right to a collective action. Some employees rejected the offer, others altered the Agreement's terms in a counteroffer, and still others accepted the Agreement as is. Plaintiffs now ask this Court to strike part of the consideration in the unaltered Agreements after both sides have fully performed. Because the right to a collective action is waivable and the Agreement is enforceable, this Court declines to do so.

IT IS SO ORDERED.

　　　　　　　　　　　　　　　　　　　　　s/ *Jack Zouhary*
　　　　　　　　　　　　　　　　　　　　　JACK ZOUHARY
　　　　　　　　　　　　　　　　　　　　　U. S. DISTRICT JUDGE

　　　　　　　　　　　　　　　　　　　　　August 3, 2012