IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Thomas E. Killion, et al., | Case Nos. 3:12 CV 470 |
| | 3:12 CV 1585 |
| Plaintiffs, | |
| | MEMORANDUM OPINION |
| -vs- | AND ORDER |
| KeHE Distributors, | JUDGE JACK ZOUHARY |
| Defendant. | |

\* \* \*

| | |
|---|---|
| Barney Dolan, et al., | |
| Plaintiffs, | |
| -vs- | |
| KeHE Food Distributors, Inc., | |
| Defendant. | |

### INTRODUCTION

This is a dispute under the Fair Labor Standards Act ("FLSA") where Plaintiffs allege their former employer, Defendant KeHE Distributors ("KeHE"), a national distributor of food products to supermarkets and retail chains, denied overtime pay to current and former sales representatives (Doc. 1 at 1–3). Before this Court is Plaintiffs' Motion for Conditional Certification seeking collective action status under the FLSA, 29 U.S.C. § 216(b), and Approval of Discovery and Notice to the Putative Class (Docs. 98 & 103). Defendants oppose the Motion (Doc. 100). For the reasons described below, this Court grants the Motion.

**BACKGROUND**

Defendant KeHE is a wholesale distributor of organic and specialty food products to grocery store chains, independent grocery stores, and small retail businesses such as produce markets and butcher shops (Doc. 100 at 8).  In the Great Lakes Region, which includes Ohio, Michigan, Illinois, Indiana, and Northern Kentucky, KeHE has employed several hundred so-called sales representatives. These representatives service KeHE's various accounts, and each representative is responsible for a set of stores within a specific area (Doc. 100 at 9).  They work out of their homes, drive to the various stores for which they are responsible, and KeHE argues that they have "significant autonomy and discretion in their day-to-day activities" (Doc. 100 at 9).  For its national grocery store chain accounts, KeHE "typically has a [sales] relationship with the client at the account level" (Doc. 100 at 13), meaning decisions regarding which KeHE products and the amount of KeHE products that are sold at these chains typically are not made on a store-by-store basis.  Conversely, KeHE typically does not have an account relationship for the independent grocery stores; sales representatives have a more direct involvement in sales to these individual stores (Doc. 100 at 13).

KeHE argues that its sales representatives' primary duty is to sell KeHE products regardless of whether they primarily service national and regional chains or independent stores (Doc. 100 at 10–15).  They do so by "identifying, presenting and selling to store management opportunities to increase store sales; monitoring competitor activities in their territories; recommending paths forward to increase KeHE profitability and following up on those opportunities; and adding new clients to KeHE's customer base" (Doc. 100 at 9–13).  Sales representatives are compensated by commission (Doc. 100 at 3).  The commission takes into account the amount of KeHE product sold at stores for which the representative is responsible (Doc. 100 at 9), as well as other factors including "stocking,"

"store maintenance," "promotional marketing," "order management," "order writing," "price marking," "credit management," "detail check in," "reconciliation," and "exception service" (Doc. 98-2 at 4).

KeHE classifies its sales representatives as exempt from the FLSA overtime requirements under the outside sales exemption found in 29 U.S.C. § 213(a)(1). This means KeHE does not pay its sales representatives time-and-one-half compensation for hours worked above forty in a week.

Lead Plaintiffs are former KeHE sales representatives who primarily serviced national and regional chains for KeHE, such as Meijer, Giant Eagle, Wal-Mart, and Kroger (Doc. 98-1 at 3–4, 13–14, 17–18, 28–29, 32–33, 36–37, 40–41, 44–45, 55–56, 59–60, 63–64). In servicing KeHE's national and regional accounts, Plaintiffs assert they did not make sales; rather, they argue sales were made at the national or regional level (*see* Doc. 98-1 at 4). For example, Plaintiff Thomas Killion argues his primary duties were service-related, and included "ordering replacement product, stocking and re-stocking shelves, setting up and re-setting displays, replacing expired and defective product and writing credits" (*e.g.*, Doc. 98-1 at 4). Further, Plaintiffs argue they differ from sales representatives who primarily serviced independent accounts because Plaintiffs had no "direct involvement" in KeHE's sales to the national chains (Doc. 98-1 at 4), whereas representatives who primarily serviced independent stores did have direct involvement in sales.

Plaintiffs point to certain documents produced by KeHE, which help illustrate the relationship between KeHE and Plaintiffs. First, Plaintiffs direct this Court to an example of a "weekly planner," which was distributed to representatives servicing Meijer stores, that purports to show a substantial level of control by KeHE over the representatives' day-to-day activities (*see, e.g.*, Doc. 98-2 at 2). They argue KeHE set guidelines for how the representatives could perform their duties, and that they

3

had no input into the generation of these guidelines. They also point to KeHE's compensation structure for sales representatives, and argue that their commissions were based largely on "service-oriented duties" they provided in stores rather than sales figures (Doc. 103 at 8). Additionally, Plaintiffs argue they all had the same job titles, and that KeHE classified them all internally in the same manner. They submit payroll registers from KeHE, which show that KeHE applied the same internal job code to each of the named Plaintiffs (Doc. 103-1 at 4–63).

Plaintiffs allege that KeHE misclassified them as FLSA-exempt outside sales employees. They argue they are not covered by the outside sales exemption because selling was not their primary responsibility; rather, their primary duties included servicing accounts and promoting sales actually made by KeHE on a national level (Doc. 103 at 7–9).

Plaintiffs now move for conditional certification seeking collective action status under Section 216(b) of the FLSA for a class of sales representatives who, since March 1, 2009, "spent a majority of their work hours providing promotional services to KeHE's large retail chain customers in the Great Lakes Region for which product sales were consummated primarily on a regional or national account basis" (Doc. 98 at 8). In addition, Plaintiffs seek this Court's approval for discovery from KeHE of the names and contact information of Great Lakes sales representatives who primarily serviced national and regional accounts for purposes of notice under Section 216(b). The parties agreed to submit the issue of conditional certification to this Court before conducting substantial discovery, and before addressing the merits of the outside sales exemption as it applies to these sales representatives (Doc. 95 at 2).

4

**FLSA CONDITIONAL CERTIFICATION STANDARD**

The FLSA provides a private cause of action against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Collective actions brought by employees under the FLSA require putative class members to opt into the action, or generally termed, the "class."[1] *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). The statutory standard for bringing a collective action under the FLSA is that the opt-in plaintiffs are "similarly situated." *Id.* "Similarly situated" does not mean plaintiffs need to be identical; however, it is lead plaintiffs' burden to show the opt-in plaintiffs are similarly situated to the lead plaintiffs. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009).

**General FLSA Certification Process**

Traditionally, courts in the Sixth Circuit follow a two-stage certification process to determine whether a proposed group of plaintiffs is "similarly situated" for purposes of the statute's requirements. The first, or "notice" stage, takes place at the beginning of discovery with a focus on determining whether there are plausible grounds for plaintiffs' claims. If so, plaintiffs are permitted to solicit opt-in notices, under court supervision, to potential plaintiffs such as current and former employees of defendant. The second stage occurs after "all of the opt-in forms have been received and discovery has concluded." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (internal quotation and citation omitted).

---

[1] Though a group of plaintiffs in a collective action under the FLSA is not technically a "class" as defined under Federal Civil Rule 23, for simplicity, this Opinion uses the term "class" as a short-form reference to the putative group of opt-in plaintiffs in the proposed collective actions.

The first stage is "fairly lenient," requiring only that plaintiffs show a colorable basis for their claim that a class of similarly situated plaintiffs exists. *White v. MPW Indus. Serv., Inc.*, 236 F.R.D. 363, 366–67 (E.D. Tenn. 2006) (internal citations omitted); *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004). Some courts have held that this burden can be met solely upon allegations in the complaint, *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996) (citation omitted), whereas others have required a "modest factual showing." *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595–96 (S.D. Ohio 2002) (quotation and citation omitted). During the notice stage, courts "do not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." *Shipes v. Amurcon Corp.*, 2012 WL 995362, at *5 (E.D. Mich. 2012) (citing *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 219 (E.D. Mich. 2010)). Once plaintiffs meet their burden at this stage, "a defendant cannot overcome their showing by arguing that individual issues predominate." *Id.* at *7.

Second stage review, however, is understandably more stringent as it occurs after the receipt of completed opt-in notices and completed discovery. At this point, the court considers all the evidence, in conjunction with the demographic data of the putative opt-in plaintiffs, to determine whether the assembled class is sufficiently "similarly situated" to continue as a collective action or whether the putative class should be "decertified," leaving plaintiffs free to pursue their claims on an individualized basis. The primary factors considered in a second-stage analysis are: (1) the disparate factual and employment settings of the individual opt-in plaintiffs; (2) the various defenses available to defendants with respect to individual plaintiffs; and (3) fairness and procedural considerations. *Olivo*, 374 F. Supp. 2d at 548 n.2 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).

6

Because the parties here have agreed to have conditional certification determined at the very early stages of this case, Plaintiffs' threshold showing of being "similarly situated" will be measured against the more lenient notice standard.

## ANALYSIS

### The FLSA Overtime Requirements and the Outside Sales Exemption

Although the issue is not before this Court on this Motion, it is worth noting broadly the framework under which the merits of Plaintiffs' case will be decided. Pursuant to the FLSA, under certain circumstances an employer must not require an employee to work more than forty hours per week without paying that employee time-and-one-half for overtime. 29 U.S.C. §§ 207(a) & 215(a). There are exemptions to the overtime pay requirements of the FLSA. *Id.* at § 213. Relevant here is the "outside sales" exemption under Section 213(a)(1), which provides that the overtime requirements do not apply to employees acting in the capacity of outside salespersons. The FLSA-implementing regulations explain that an employee whose primary duty is "making sales," and "who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty" is properly classified as an outside salesperson. 29 C.F.R. § 541.500. The term "sales" is defined broadly, and includes "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k). Actions by the employee "performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work." 29 C.F.R. § 541.500.

To determine an employee's primary duty, the word "primary" is defined as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700. "Determination of an employee's primary duty must be based on all the facts in a particular case, with

7

the major emphasis on the character of the employee's job as a whole." *Id.* Among other things, courts should consider: (1) the relative importance of the employee's exempt duties; (2) the amount of time spent performing exempt work as opposed to non-exempt work; and (3) the employee's relative freedom from direct supervision. *Id.*

Courts considering whether an exemption applies typically do so at the summary judgment stage, after some discovery on the issue. *See, e.g.*, *Burdine v. Covidien, Inc.*, 2011 WL 2976929, at *4 (E.D. Tenn. 2011) (granting conditional certification and deferring the exemption question until after discovery); *see also Renfro v. Ind. Mich. Power Co.*, 497 F.3d 573, 578 (6th Cir. 2007). This Court has already raised some of its concerns regarding the merits at issue here (Doc. 75), especially in light of the Supreme Court's decision in *Christopher v. Smithkline Beecham Corp.*, 567 U.S. ---, 132 S. Ct. 2156 (2012). Parties should keep these concerns in mind as discovery progresses.

**Misclassification and Notice Stage Scrutiny**

In order to be conditionally certified under Section 216(b), lead plaintiffs must allege they are harmed by a FLSA-violating policy or practice, and are similarly situated to the putative class of opt-in plaintiffs. When plaintiffs allege misclassification as the FLSA-violating policy, it is not enough for plaintiffs simply to assert they are similarly situated to the putative class because the employer applied a similar classification to all of them, even at the notice stage. Indeed, numerous courts have required misclassification lead plaintiffs to make at least a modest factual showing of being similarly situated. *See, e.g.*, *Shipes*, 2012 WL 995362, at *9–10; *Wlotkowski v. Mich. Bell. Tel. Co.*, 267 F.R.D. 213, 217 (E.D. Mich. 2010); *see also Vasquez v. Vitamin Shoppe Indus., Inc.*, 2011 WL 2693712, at *4 (S.D.N.Y. 2011); *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 927 (D. Ariz. 2010).

Requiring a modest factual showing accords with the purposes of Section 216(b), and does not implicate the more stringent standards of Federal Civil Rule 23.

For example, in *Wlotkowski*, plaintiffs alleged that they were misclassified by defendant as exempt administrative employees. The district court found plaintiffs similarly situated to the putative class where plaintiffs submitted thirty-five declarations from both named and opt-in plaintiffs. 267 F.R.D. at 215, 217–18. Among other things, the declarations showed that the putative class of plaintiffs all held the same job title, worked for the same defendant, and performed similar job duties governed by standards established by someone else. *Id.* at 218. The court found these declarations sufficient to satisfy the lenient burden for conditional certification. *Id.* at 217.

In comparison, the one lead plaintiff in *Shipes* who alleged misclassification submitted only her own declaration, which provided evidence only of her actions and defendant's actions toward her. 2012 WL 995362, at *2. The declaration provided no evidence that other employees actually performed similar job duties. *Id.* at *10. The court found "[w]hile her affidavit suggests she may have been subjected to FLSA-violating policies, standing alone, this declaration does not establish a right to proceed collectively." *Id.* Similarly, the district court in *Vasquez* refused to certify a nationwide and statewide collective action based solely on the declaration testimony of an employee who had personal experience in only seven of defendant's stores. 2011 WL 2693712, at *3–4. The court found plaintiff's submission, which was based entirely on his own experience, "devoid of any evidence from which this Court could infer that all [sales managers], across 40 states, are misclassified." *Id.* And in *Colson*, plaintiffs submitted three declarations, none of which the court found to have evidentiary value. 687 F. Supp. 2d at 928–29. Only one of the declarations came from a plaintiff who held the job title at issue, and the declaration appeared to be based on "vague"

9

opinions. The other two declarations came from individuals who were not part of the putative class. *Id.* The court therefore refused to conditionally certify the class. *Id.* at 929–30.

Plaintiffs' evidentiary showing here falls between *Wlotkowski* and the collection of *Shipes*, *Vasquez*, and *Colson*. Similar to *Wlotkowski*, Plaintiffs submit the sworn declarations of eleven former KeHE sales representatives who primarily serviced national or regional accounts in the Great Lakes Region. The affidavits demonstrate that Plaintiffs had the same job title -- sales representative -- and shared common job duties, such as ordering replacement product, stocking and re-stocking shelves, setting up and re-setting displays, replacing expired and defective product, and writing credits. Although each Plaintiff describes his job slightly differently, that is not a bar to conditional certification so long as Plaintiffs can show they are similarly situated. *O'Brien*, 575 F.3d at 584. Plaintiffs fall short of a *Wlotkowski*-level showing, however, because their evidence does not describe the amount of time spent performing some activities relative to others. Specifically, in their briefing, Plaintiffs argue they spend "the majority of their time" performing non-sales activities -- Plaintiffs' declarations, however, fail to specify the relative amounts of time spent on each activity.

In addition to their declarations, Plaintiffs also submit a document that appears to be provided by KeHE management, containing a set of weekly instructions from KeHE to the sales representatives who serviced Meijer stores (Doc. 98-2 at 2). Plaintiffs argue this document, and others like it, governed their day-to-day activities, and limited their discretion in similar ways (Doc. 98 at 6). Plaintiffs further submit payroll registers from KeHE showing the same internal job code for each of the named Plaintiffs (Doc. 103-1 at 4–63). Plaintiffs argue that this evidence, presented at the notice stage of these proceedings, is sufficient for this Court to conditionally certify their class.

KeHE offers a number of arguments against conditional certification. First, KeHE argues that the primary duty of all its sales representatives, regardless of which accounts they service, is to make sales. As such, its sales representatives are properly classified as exempt under the FLSA. KeHE submits the declarations of various employees, including some sales representatives, to counter those submitted by Plaintiffs (Doc. 100-1). But the declarations from sales representatives submitted by KeHE all appear to have been written by those who primarily service independent stores. At the notice stage, this Court does not undertake a credibility determination to weigh the declarations in support of each side. *Shipes*, 2012 WL 995362, at *5. Rather, this Court's role is to determine whether Plaintiffs have established through their submissions a colorable basis for their claim.

Second, KeHE argues that the Supreme Court's decision in *Christopher* precludes Plaintiffs' claim because that case forecloses the argument that so-called "promotion work" is not "sales." Moreover, KeHE seems to argue, for purposes of the outside sales exemption, there is no material difference between these Plaintiffs and the *Christopher* plaintiffs in that Plaintiffs here, even if they did not sell in a traditional sense, did "make sales" as the Court in *Christopher* defined the term. Discovery is needed to determine the extent to which Plaintiffs here are distinguishable (or not) from plaintiffs in *Christopher*; such a determination is not a part of this Court's notice stage analysis. *Shipes*, 2012 WL 995362, at *5.

Third, KeHE argues that "no two KeHE sales representatives are the same in any material way" (Doc. 100 at 23), noting that each has different territories and mixes of clients. KeHE further argues this case will involve individual and fact-intensive examinations for each Plaintiff, and as such the class should not be certified. But Plaintiffs have made a sufficient showing for conditional certification at this early stage. Because they have made this showing, KeHE's argument that

11

individual issues will predominate cannot overcome Plaintiffs' evidentiary showing. *Shipes*, 2012 WL 995362, at *7.

Fourth, KeHE states that national and regional chains make up a small percentage of the stores its representatives service. KeHE further notes that Plaintiffs, in addition to servicing national accounts for KeHE, also service some independent stores. As such, KeHE argues even lead Plaintiffs made sales. Again, this is an argument better suited to second stage-certification and the merits of the outside sales exemption. Even still, the *amount* of stores is not nearly as relevant to the inquiry on "primary duty" as is the *time spent* by each representative. *See* 29 C.F.R. § 541.700. If there is a material difference between sales representatives who primarily service national accounts and those who primarily service independent stores, an important issue at later stages in this case will be the relative amount of time Plaintiffs spent working on each type of account.

Finally, both Plaintiffs and KeHE direct this Court to a recent decision by the Washington district court, which conditionally certified a class of KeHE sales representatives. *Troy v. KeHE Food Distribs., Inc.*, 276 F.R.D. 642 (W.D. Wash. 2011). For a number of reasons, that decision has little bearing on the issues before this Court at this time. First, *Troy* is a second-stage decision, and as such applied a different standard to its evidentiary analysis. *Id.* at 649–50. Second, plaintiffs in *Troy* all serviced one chain of grocery stores, which is different from Plaintiffs here who serviced a number of large chains. As such, it may be the case that plaintiffs in *Troy* are more similarly situated than Plaintiffs here. But to the extent *Troy* is relevant to later proceedings in this Court, the facts and procedural posture of *Troy* are such that it does not guide this Court's decision on conditional certification at the notice stage.

Weighing Plaintiffs' evidentiary showing at this early stage in our proceedings, before any substantial discovery has been undertaken, this Court is satisfied Plaintiffs have made the required modest factual showing that establishes a colorable basis for their claim that a class of similarly situated plaintiffs exists. Plaintiffs have done more than merely assert that KeHE has classified them all as exempt from the FLSA overtime protections. They have submitted sufficient evidence that KeHE sales representatives who primarily serviced national and regional chain stores in the Great Lakes region are similarly situated because, among other things, they hold the same job title, have similar job duties, and have limited discretion in how they perform their day-to-day activities. Therefore, this Court will conditionally certify this class, and will be ready to reassess its certification under the more stringent second-stage analysis once the parties have completed discovery.

## CONCLUSION

Because Plaintiffs have established a colorable basis that they are similarly situated to the putative class of KeHE sales representatives who, since March 1, 2009, spent a majority of their work hours providing promotional services to KeHE's large retail chain customers in the Great Lakes Region, this Court grants Plaintiffs' Motion to Conditionally Certify the Collective Action (Doc. 98). Further, this Court grants Plaintiffs' Motion for Discovery from KeHE (*Id.*), and orders KeHE to provide Plaintiffs' counsel with the names and contact information for all individuals who have been employed as sales representatives in the Great Lakes Region since March 1, 2009, for purposes of giving notice to potential opt-in plaintiffs. The parties are further ordered to confer and submit to this Court by **November 9, 2012** a joint-proposed notice document and proposed opt-in schedule.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

October 31, 2012